**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHARLES E. SAMUEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 17 C 4596 |
| ) | |
| NANCY A. BERRYHILL, Acting ) | Magistrate Judge Daniel G. Martin |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Charles E. Samuel ("Samuel") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Samuel asks the Court to reverse and remand the ALJ's decision, and the Commissioner seeks an order affirming the decision. For the reasons set forth below, the ALJ's decision is reversed and this case is remanded to the Social Security Administration for further proceedings consistent with this Opinion.

**I. BACKGROUND**

Samuel was born on July 18, 1954 and has a history of back pain beginning in 1991. Samuel alleges that he became totally disabled on September 27, 2012 due mainly to back pain. Samuel had an uninterrupted 37-year work history prior to his alleged onset date of disability, mainly as a crane operator. Samuel's insured status for DIB purposes expired on December 31, 2013, which means Samuel had to show he was disabled on or before that date in order to be eligible for DIB. *Shideler v. Astrue*, 688 F.3d 308, 311 (7th Cir. 2012) (noting "the claimant must establish that he was disabled before the expiration of his insured status . . . to be eligible for disability insurance benefits.").

Under the standard five-step analysis used to evaluate disability, the ALJ found that Samuel had not engaged in substantial gainful activity during the period from his alleged onset

date of September 27, 2012 through his date last insured of December 31, 2013 (step one); his disorders of the back, osteoarthritis, and peripheral neuropathy were a severe impairment (step two); but that his disorders of the back, osteoarthritis, and peripheral neuropathies did not qualify as a listed impairment (step three).  The ALJ determined that Samuel retained the residual functional capacity ("RFC") to perform medium work (lifting and carrying up to 50 pounds occasionally and 25 pounds frequently and sitting, standing, and walking approximately 6 hours in an 8-hour workday) except that he was limited to work requiring no more than frequent ladders, ropes or scaffolds, stairs or ramps, balancing, kneeling, crawling, and stooping and occasional crouching.  Given this RFC, the ALJ concluded that Samuel was able to perform his past relevant work as a monorail crane operator as that work is generally performed in the national economy and as a janitor as that work is generally performed and as he performed it. The Appeals Council denied Samuel's request for review on May 15, 2017.  Samuel now seeks judicial review of the final administrative decision of the Commissioner, which is the ALJ's decision.  *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010).

## II. DISCUSSION

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(a).  In order to determine whether a claimant is disabled within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry:  (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listing found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform his former occupation; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience.  20 C.F.R. § 404.1520(a) (2012); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).  These

steps are to be performed sequentially. 20 C.F.R. § 404.1520(a) (2012). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (*quoting Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985)).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ricardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, an ALJ's credibility determination should be upheld "unless it is patently wrong." *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010).

The ALJ denied Samuel's claim at step four, finding that Samuel retains the residual functional capacity to perform his past relevant work as a monorail crane operator and janitor. Samuel challenges the ALJ's decision on four grounds: (1) the ALJ failed to properly assess the opinions of Samuel's treating physicians; (2) the ALJ improperly ignored evidence favorable to Samuel's claim; (3) the ALJ failed to adequately assess Samuel's subjective complaints of pain; and (4) the ALJ relied on faulty vocational expert testimony. The Court agrees that the ALJ erred in evaluating the treating physicians' opinions and ignored evidence favorable to Samuel's claim. Because these conclusions require remand, the Court need not address whether the ALJ also erred in her credibility determination and in relying on faulty vocational expert testimony.

## A.     Weighing of Medical Opinions

Samuel argues that the ALJ failed to properly assess the opinions of his treating physicians, Drs. Dennis J. Levinson and S. George Elias. Dr. Dennis J. Levinson, a

3

rheumatologist, regularly treated Samuel from 2003 through 2012. (R. 257-309, 325-40, 367-475). Dr. Levinson completed a residual functional capacity evaluation on June 8, 2011. (R. 327, 353-56). Dr. Levinson diagnosed lumbar spine back pain and gave Samuel a fair prognosis. (R. 353). The clinical findings and objective signs Dr. Levinson cited included a limited range of motion at L-5. *Id.* Dr. Levinson noted that Samuel had received numerous treatments for his chronic lower back pain, including physical therapy, epidural injections, and pain medications. *Id.* Dr. Levinson concluded that Samuel's impairments had lasted or could be expected to last at least 12 months. *Id.* Dr. Levinson indicated that Samuel is not a malingerer and that emotional factors do not contribute to the severity of Samuel's symptoms and functional limitations. *Id.* at 354. Dr. Levinson further indicated that Samuel's impairments were reasonably consistent with his symptoms and functional limitations. *Id.* Dr. Levinson stated that Samuel's pain is frequently severe enough to interfere with the attention and concentration needed to perform even simple work tasks. *Id.*

Dr. Levinson opined that Samuel is incapable of even "low stress" jobs because of his back pain. (R. 354). With respect to Samuel's functional limitations, Dr. Levinson found Samuel can: rarely lift and carry 10 pounds; walk ½ a city block without rest or severe pain; sit or stand 5 minutes at one time before needing to get up; sit or stand/walk less than 2 hours total in an 8-hour workday; never twist, stoop, crouch, or climb ladders; and occasionally climb stairs. (R. 354-56). Dr. Levinson opined that Samuel needs to walk around every ten minutes for 5 minutes each time during an 8-hour workday. (R. 355). Samuel needs a job that permits shifting positions at will from sitting, standing or walking. *Id.* Dr. Levinson found that Samuel needs to take unscheduled breaks every ten minutes for 5 minutes during an 8-hour workday. *Id.* Dr. Levinson opined that Samuel has significant limitations in doing repetitive reaching, handling, or fingering. (R. 356). According to Dr. Levinson, Samuel can grasp with his hands and perform fine manipulations with his fingers 50% of the workday and reach with his arms, including overhead, 20% of the workday. *Id.*

4

The ALJ's decision is deficient for failing to mention Dr. Levinson's RFC evaluation or discuss what weight she gave his opinion that Samuel's back pain precluded him from working. In evaluating a claim for disability, an ALJ "must consider all medical opinions in the record." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013); 20 C.F.R. § 404.1527(b) (stating "we will always consider the medical opinions in your case record."); *see also Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997). (stating "[t]he ALJ should consider and discuss all medical evidence that is credible, supported by clinical findings, and relevant to the question at hand."). The ALJ did not consider and assign weight to Dr. Levinson's opinion, specifically the limitations he found in Samuel's ability to lift, stand/walk, and sit. The ALJ should have considered Dr. Levinson's opinion and given some indication as to how she weighed it in evaluating Samuel's claim of disability. Because the ALJ's decision has no discussion or analysis of Dr. Levinson's opinion, the ALJ did not articulate any legally sufficient reasons for disregarding it and failed to build an adequate logical bridge between the evidence and the ALJ's conclusion that Samuel can sustain gainful employment. *Roddy*, 705 F.3d at 636. The ALJ's failure to consider Dr. Levinson's opinion constitutes a serious error.

The Commissioner argues that any error by the ALJ in failing to discuss the opinion of Dr. Levinson is harmless because the RFC evaluation that Dr. Levinson completed (1) "contains few objective findings to support his pessimistic opinion of such extremely limited functioning" and (2) pre-dates Samuel's alleged onset date of September 27, 2012. (Doc. 16 at 5-6). An error is harmless when it is "predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). The harmless error analysis is "prospective—can we say with great confidence what the ALJ would do on remand"—and not "an exercise in rationalizing the ALJ's decision." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011).

The Commissioner's harmless error arguments are unpersuasive. The Commissioner's first argument overlooks the fact that Dr. Levinson identified a limited range of motion at L-5 spine as a clinical finding and objective sign supporting his assessment and his treatment notes include examination findings of mild scoliosis and paravertebral muscle spasm in the lumbar region and MRI findings of moderate degenerative changes including facet joint arthritis and some moderate disc disease. (R. 353, 368).[1] Given this objective medical evidence identified by Dr. Levinson, the Court cannot conclude with "great confidence" that the result would not change on remand if the ALJ appropriately considered Dr. Levinson's assessment.

The Commissioner's second argument is also unavailing. The Commissioner contends that any error in the ALJ not explicitly discussing Dr. Levinson's opinion is harmless because the RFC evaluation completed by Dr. Levinson predates Samuel's alleged onset date of September 27, 2012. The RFC evaluation completed by Dr. Levinson is undated but his treatment notes indicate that he completed the form on June 8, 2011. (R. 327, 353-57). An ALJ may not ignore a treating physician's opinion simply because it predates the alleged onset date. *Roddy*, 705 F.3d at 631. (holding the ALJ's failure to address a treating physician's opinions rendered two and three years prior to the claimant's alleged onset date of disability was reversible error). "[T]he ALJ should consider the record as a whole, including pre-onset evidence (particularly relating to a degenerative condition) and post-onset evidence." *Johnson v. Sullivan*, 915 F.2d 1575, at *3 (7th Cir. 1990); *see also Mowat v. Volvin*, 2016 WL 3951626, at *7 (N.D. Ill. July 21, 2016) (holding that "[w]hile the [treater's] records may be from three years before the alleged onset date, which is a factor that should be considered under 20 C.F.R. § 404.1527(c) and SSR 96-8p, that alone does not automatically render them outdated."). As a treating physician's opinion predating the onset of alleged disability may be relevant, the Court cannot say with "great confidence" that the ALJ's decision on remand will be the same. Accordingly,

---

[1] An additional clinical finding and objective sign identified by Dr. Levinson on the Physical Residual Functional Capacity Questionnaire is illegible. (R. 353).

the Court finds that the ALJ's failure to consider the opinion of Dr. Levinson was not harmless error.

In determining Samuel's RFC, the ALJ gave "great weight" to the opinion of consultative examiner Dr. Rochelle Hawkins, who examined Samuel on April 16, 2014. (R. 25, 484-92). The ALJ gave "little weight" to the opinion of Dr. Elias, an orthopedic surgeon and Samuel's treating physician. (R. 26). "A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003); 20 C.F.R. § 404.1527(c)(2).[2] "More weight is given to the opinion of treating physicians because of their greater familiarity with the claimant's conditions and circumstances." *Gudgel*, 345 F.3d at 470. An ALJ must provide "good reasons" for not giving controlling weight to a treating physician's opinion. *Campbell*, 627 F.3d 299, 306 (7th Cir. 2010); 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our . . . decision for the weight we give your treating source's opinion.").

Samuel began treatment with Dr. Elias on May 15, 2014. (R. 498-502). Dr. Elias conducted a three-to-four hour initial orthopedic evaluation and examination and made extensive notes. (R. 498-502). Dr. Elias noted that Plaintiff was in a lot of pain and could not stand more than 15 to 30 minutes at a time and sit more than one hour. (R. 498). Dr. Elias' physical examination revealed: a very slow stance gait; difficulty heel walking; toe walking not at its tips; squatting caused pain at 10/10 and when repeated caused shortness of breath; range of motion limited by approximately 50%; difficulty getting on and off the examination table; straight leg raise test positive on the left at 70 degrees with pain in the lower back radiating

---

[2] For claims filed on or after March 27, 2017, the rules in § 404.1520c (not § 404.1527) apply. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Samuel's claim was filed before March 27, 2017, and the Court therefore analyzes his claim pursuant to the rules set out in § 404.1527(c).

down to the proximal thigh posteriorly; Milgram's test[3] and any tests that increase intrathecal pressure caused pain at 10/10 and severe pain would not allow Samuel to maintain the high pressure in his lower back; Patrick's[4] and Gaenslen's[5] tests were positive bilaterally at 5/10; facet arthropathy at least all along the lower back; muscle function was 5/5 but he had absent patellar tendon reflex on the right side, absent Bablnski on the right side, and +1 patellar and Achilles tendon on the left side and Achilles tendon on the right side; clonus negative bilaterally; no clear upper motor neuro lesion; and no clear sensory deficits. (R. 499).

Dr. Elias' opinion took into account the results of Samuel's x-ray and MRI studies. The May 15, 2014 x-rays of Samuel's spine showed thoracolumbar curvature of approximately fifteen degrees with base narrowing and collapse of the one vertebra to the left primarily with some changes noted in the left hip area. (R. 499). Dr. Elias added:

> I don't consider that mild at this point particularly in light of the fact that he definitely has rotatory changes as well with respect to the facets. On lateral view, he definitely has some traction osteophytes at L1 and loss of lumbar lordosis, which basically indicates that he has ongoing spasms in his lumbosacral spine, which are not new.

(R. 499-500).

Dr. Elias also reviewed the January 22, 2011 MRI of Samuel's lumbar spine and compared it to the accompanying MRI report. (R. 500). Dr. Elias found that the MRI report "does him injustice" because the MRI report understated very serious damage to Samuel's lumbar spine. *Id.* Dr. Elias wrote:

---

[3] The Milgram test is used to "detect space-occupying lesions and general spinal pathology." *Candela v. Commissioner of Social Sec.*, 2015 WL 4528437, at *1 n.4 (N.D. Ohio July 27, 2015) (*quoting* http://www.ncbi.nlm.nih.gov/pmc/articles/PMC2647096 (last visited July 20, 2015)). "A positive [Milgram] test result occurs when the patient experiences lumbosacral pain indicating unspecified lumbosacral pathology." *Id.*

[4] The Patrick's test or FABER test (for Flexion, Abduction, and External Rotation) "is performed to evaluate pathology of the hip or the sacroiliac joint." *Harvala v. Colvin*, 2015 WL 5177608, at *4 n.6 (N.D. Ill. Sept. 3, 2015).

[5] The Gaenslen's test is used to evaluate abnormalities and inflammation of the lumbar vertebrae and sacroiliac joint. *Decker v. Colvin*, 2013 WL 5300641, at *3 (N.D. Ill. Sept. 19, 2013).

I would like to say off the bat that the report does him injustice as well as some other reports in his medical records because the MRI itself reveals a very serious damage to the L1-L2 disc with very serious anterior herniation and had this herniation been posterior, this patient could have been paraparatic or paraplegic. However, it is like in the sense that the herniation occurred anteriorly, but on top that he has a fracture of the end plates of L1-L2 mainly L1, which somehow the report does not do it any justice at all. There is actually a collapse of the anterior wall by approximately 15 to 20% in jagged fashion, which basically means that this injury was ongoing. Interestingly, T1-2 is also damage[d] particularly with respect to H1Z and I believe that his was a segmental failure that occurred after the L1-L2 had been damaged and it seems like this issue had been missed by many physicians and was trivialized in my opinion. Nevertheless, it is a major issue and just this one finding is enough to cause any person pain let alone disability. However, on top of that, the patient has a large herniated disc at the L4-L5 level, which the report does not do any justice, as a matter of fact, it does not really mention that as much. It mentions the L5-S1 level, which has also herniated disc with spondylolysis and then in my belie[f] the L4-L5 fails first followed by L5-S1 due to the gravity of the herniation and then eventually the L3-L4 shows the high intensity zone pertaining to the annular tear. The only disc that has survived so far without any damage so to speak is L2-L3 in my opinion and this is on its way to being damaged as well so if that gets damage then the entirety of the L-spine including the last thoracolumbar disc will all [be] damage[d], so in other words, the entirely of his six discs would be affected.

There is also some permanency noted on these in terms of the disc desiccation, where the signal changes show that the changes are irreversible at this particular point and the compression on these nerves are very obvious with neural foraminal stenosis leading to not only facet arthropathy, but now some spurring, which could even cause him to have permanency pertaining to nerve damage down the line, not just mechanical damage.

*Id.*

Dr. Elias' impression was that Samuel had acute on chronic low back pain associated with bilateral lumbar radiculopathy, right worse than left, with herniated disc pulposus of L1-L2, L4-L5, and L5-S1 and high intensity zone (HIZ) of those levels as well as HIZ of L3-L4 and T12-L1, end plate fractures of L1-L2 and also L4-L5, facet arthropathy for all levels T12-L1, L1-L2, L2-L3, L3-L4, L4-L5 and L5-S1 with SI joint arthropathy bilaterally. *Id.* Dr. Elias recommended physical therapy and high and low lumbar steroid injections preceded by epidurogram and epidurolysis and facet blocks as well as selective nerve root blocks primarily to the areas that were causing the most pain. (R. 501-02). Dr. Elias also provided Samuel with a prescription for Vicoprofen. (R. 501).

Dr. Elias examined Samuel on two additional occasions prior to completing a Medical Source Statement. (R. 495-97). On May 22, 2014, Dr. Elias noted that Samuel was experiencing pain radiating down mostly to the right side which Samuel rated at a 9 out of 10. (R. 496). Dr. Elias wrote:

> We discussed earlier his extensive pathology, which every time I review it I am shocked to note that he has the entirety of his lumbar spine involved and as if that is not enough he also has T12-L1 involved. He has an end plate fracture of L1-12, L4-L5 and L5-S1 with HIZ levels at those levels as well in addition to annular tears at L3-L4 and L2-L3. The entire spine is basically shot together with SI joint bilaterally.

(R. 496). Dr. Elias scheduled a high and low lumbar epidural steroid injection with an epidurogram and epidurolysis. *Id.* He intended to do a right sciatic nerve block and a medial branch block of L4-L5, L5-S1, and L3-L4 for adjacent levels plus selective nerve root block of L1-L2, L3-L4 and L5-S1 and also a sacroiliac (SI) joint block right and left. *Id.* At his next visit with Dr. Elias on June 3, 2014, Samuel was doing well. (R. 495). Samuel had more pain on the left side than the right side because Dr. Elias had previously performed the procedure on the right side. *Id.* Samuel demonstrated symptomatology pertaining to facet arthropathy of L4-L5 and L5-S1 as well as SI joint on the left. *Id.* Dr. Elias noted that Samuel would have nerve blocks on June 13, 2014. *Id.*

On June 3, 2014, Dr. Elias completed a Medical Source Statement of Ability to do Work-Related Activities (Physical). (R. 504-09). He opined that Samuel could never lift and carry due to his herniated discs. (R. 504-05) Dr. Elias concluded that Samuel required a cane to ambulate at times, though with pain management he could discard the cane. (R. 505). Without a cane, Samuel could ambulate one block. *Id.* Dr. Elias wrote that Samuel can sit, stand, and walk for fifteen minutes at one time and two hours total in an 8-hour work day. *Id.* Dr. Elias identified lumbar herniated discs, facet arthropathy, and cervical and thoracic arthropathy as the clinical findings which supported his assessment. *Id.* Dr. Elias opined that Samuel's limitations had lasted or were expected to last for twelve consecutive months. *Id.*

The ALJ gave several unpersuasive reasons for not giving controlling weight to Dr. Elias' assessment that Samuel is limited to less than sedentary exertional work. First, the ALJ faulted Dr. Elias' opinion because "Dr. Elias provided little to no treatment notes to support his opinion and instead relied on a check the block [sic] form with little explanation." (R. 26). "An ALJ is not required to accept a doctor's opinion if it 'is brief, conclusory, and inadequately supported by clinical findings.'" *Gildon v. Astrue*, 260 Fed. Appx 927, 929 (7th Cir. 2008) (*quoting Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)); *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) (holding that an ALJ may reject a treating physician's opinion that is conclusory and unsupported by the evidence). Moreover, "[a]lthough by itself a check-box form might be weak evidence, the form takes on greater significance when it is supported by medical records." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010).

The first reason given by the ALJ is not a good reason for discounting Dr. Elias' opinion because the ALJ failed to assess Dr. Elias' opinion in conjunction with the clinical findings he listed and his treatment records. The Medical Source Statement completed by Dr. Elias did contain some check-the-box type questions, but it also asked Dr. Elias to provide the particular medical or clinical findings which supported his assessment. (R. 505). Dr. Elias indicated lumbar herniated discs, facet arthropathy, and cervical and thoracic arthropathy. *Id*. The ALJ failed to acknowledge or discuss these specific findings by Dr. Elias. (R. 26). Further, the ALJ failed to account for any of Dr. Elias' treatment records in ruling that Dr. Elias had not explained his findings and "provided little to no treatment notes to support his opinion." (R. 26). Dr. Elias' examination findings and treatment notes support the medical findings noted by him in the Medical Source Statement, namely acute on chronic low back pain associated with bilateral lumbar radiculopathy with herniated discs and facet arthropathy for all levels. (R. 500). Dr. Elias conducted an extensive lumbosacral examination of Samuel and documented slow stance gait, heel walking difficulty, and squatting causing 10/10 pain. (R. 498-502). Dr. Elias recorded Samuel's difficulty getting on and off the exam table. *Id*. Samuel demonstrated positive straight

leg raise testing on the left. *Id.* Patrick's and Gaenslen's tests were positive bilaterally. *Id.* Samuel similarly failed a Milgram's test. *Id.* The ALJ did not describe the contents of any of the treatment records provided by Dr. Elias. There was additional supporting evidence from Dr. Elias, such as his interpretation of Samuel's abnormal MRI and x-ray results. (R. 499-500). Dr. Elias prescribed narcotic medication, nerve blocks and epidural steroid injections. (R. 501-02). These findings of Dr. Elias support Samuel's claim of disability. The ALJ should have explained why Dr. Elias' clinical findings and treatment notes did not support his opinion.

The second reason the ALJ gave for discrediting Dr. Elias' June 2014 opinion is that it "was given six months after the date last insured." (R. 26). Standing alone, the fact that Dr. Elias' opinion did not exist as of the date last insured does not mean that such evidence automatically lacks probative value as to his pre-date last insured condition. *Eichstadt v. Astrue*, 534 F.3d 663, 667 (7th Cir. 2008) (finding ALJ did not refuse to consider evidence that post-dated claimant's date last insured "but instead she examined it as required."); *Estok*, 152 F.2d at 640 (holding "[a] retrospective diagnosis may be considered only if it is corroborated by evidence contemporaneous with the eligible period."); *Halvorsen v. Heckler*, 743 F.2d 1221, 1225 (7th Cir. 1984) (holding "[t]here can be no doubt that medical evidence from a time subsequent to a certain period is relevant to a determination of a claimant's condition during that period."). ALJs are required to consider "*all* relevant evidence" in the administrative record, including evidence that postdates the date last insured. *Parker v. Astrue*, 597 F.3d 920, 925 (7th Cir. 2010).

Dr. Elias' June 2014 interpretation of Samuel's January 22, 2011 MRI of his lumbar spine is relevant as is relates back to the time period before Samuel's date last insured of December 31, 2013. Similarly, the results of the x-rays taken by Dr. Elias on May 15, 2014 may apply to Samuel's condition prior to December 31, 2013. After reviewing the x-rays, Dr. Elias concluded that Samuel "definitely has some traction osteophytes at L1 and loss of lumbar lordosis, which basically indicates that he has ongoing spasms in his lumbosacral spine, *which*

*are not new.*"  (R. 500) (emphasis added).  Dr. Elias' initial evaluation notes from May 15, 2014 may also tend to suggest that Elias was disabled prior to his date last insured, especially given the long-standing nature of Samuel's back condition and that Dr. Elias' notes postdate the date last insured by less than five months.  For example, Dr. Elias stated that "there could have been some care and treatment that could [have] be[en] implemented sometime ago to prevent this from getting to this particular point, but the issue such as the damage to the discs and the facets … are now regrettably permanent."  (R. 501).  Because this evidence from Dr. Elias may provide support for finding that Samuel was disabled prior to his date last insured, the ALJ was required to consider the evidence from Dr. Elias during her RFC assessment.  On remand, the ALJ should consider whether the evidence from Dr. Elias sheds light on Samuel's condition during the relevant time in reevaluating Samuel's RFC.  The ALJ may recontact Dr. Elias if the information in the record is insufficient to determine whether Dr. Elias' opinion relates to the time period before the date last insured.  20 C.F.R. § 404.1520b(2).

The third reason given by the ALJ for affording little weight to Dr. Elias' opinion, that his "opinion infringes on a matter reserved for the Commissioner, whether the claimant is disabled," is also problematic.  (R. 26).  The ALJ is correct that she did not have to accept Dr. Elias' June 13, 2014 statement that Samuel was disabled.  *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016); *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (noting the regulations reserve to the Commissioner "'the *final* responsibility for deciding residual functional capacity (ability to work—and so whether the applicant is disabled).").  However, the fact that Dr. Elias expressed an opinion on the ultimate issue is not a valid reason to discount his opinions.  "The pertinent regulation says that 'a statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine you are disabled.'  That's not the same thing as saying that such a statement is improper and therefore to be ignored. . . ."  *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012).  Social Security Ruling 9-5p instructs that "adjudicators must always carefully consider medical source opinions about any issue, including opinions about

13

issues that are reserved to the Commissioner." SSR 96-5p, 1996 WL 374183, at *2.[6] The ALJ is "required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner." *Id.* at *3. Therefore, the ALJ's third reason was not a legitimate ground for discounting Dr. Elias' opinion regarding Samuel's physical limitations.

Fourth, in giving little weight to Dr. Elias' opinion, the ALJ substantially relied on the opinion of consultative examiner Dr. Rochelle Hawkins. The ALJ found that Dr. Elias' opinion was "extreme" given Dr. Hawkins' consultative examination findings. (R. 26). Dr. Hawkins met with Samuel one time for 26 minutes on April 16, 2014. (R. 484). Dr. Hawkins was provided no medical records to review.[7] *Id.* On examination, Dr. Hawkins found 5/5 muscle strength in the upper and lower extremities, no paraspinal muscle spasm or muscle atrophy, no anatomic abnormality of the cervical, thoracic or lumbar spine, no limitation of motion of any spinal segment, able to flex without difficulty, straight leg raising within normal limits, normal sensation to pin prick and light touch over both arms and legs, and normal gait. (R. 486-87).

"Unlike treating physicians, whose opinions are presumptively entitled to controlling weight, the opinions of nontreating physicians receive no such deference." *Slaughter v. Astrue*, 2010 WL 4625079, at *6 (N.D. Ill. Nov. 5, 2010). "When treating and consulting physicians present conflicting evidence, the ALJ may decide whom to believe, so long as substantial

---

[6] SSR 96-5p was rescinded for claims filed on or after March 27, 2017. *See* 2017 WL 3928305 (March 27, 2017). SR 95-p still applies to Samuel's claim. Under the new rules, ALJs "will not provide articulation" about their consideration of medical source opinions on issues reserved to the Commissioner "because it is inherently neither valuable nor persuasive." *Id.* at *1.

[7] Dr. Hawkins arguably should have been provided with Samuel's medical records. The Social Security Regulations require that a consultative examiner be given any necessary background information about the claimant's condition. 20 C.F.R.§ 404.1517 (stating "[i]f we arrange for [a consultative] examination or test, . . . [w]e will also give the examiner any necessary background information about your condition."). It is hard to believe that a consultative examiner who received no records from Samuel's treating physician could be deemed to have received "any necessary information about [the claimant's] condition." Treatment records and opinions from Samuel's treating provider (Dr. Levinson) would seem to be "necessary background information."

evidence supports the decision." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7ᵗʰ Cir. 2001). An ALJ may discount a treating physician's opinion if it "is inconsistent with the opinion of a consulting physician . . . as long as he minimally articulates his reasons for crediting or rejecting evidence of disability." *Schmidt v. Astrue*, 496 F.3d 833, 842 (7ᵗʰ Cir. 2007) (*quoting Skarbek v. Barnhart*, 390 F.3d 500, 503 (7ᵗʰ Cir. 2004)). "As a general rule, an ALJ is not required to credit the agency's examining physician in the face of a contrary opinion from a later reviewer or other compelling evidence." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7ᵗʰ Cir. 2014).

The ALJ's only explanation for preferring Dr. Hawkins' opinion over Dr. Elias' opinion was that Dr. Hawkins "is a highly trained health provider, familiar with the rules and regulations of disability determinations," she personally observed and examined Samuel, and her conclusions were "generally supported by the objective findings in the record." (R. 25). The ALJ's first point is troublesome. "If an ALJ can reject a treating physician's opinion simply because a non-treating … doctor is more familiar with the disability standards, then he would be granting favored status to the non-treating doctor which is unsupported by the regulations." *Gravina v. Astrue*, 2012 WL 3006470, at *5 (N.D. Ill. July 23, 2012) (*citing* 20 C.F.R. § 404.1527; SSR 96-2p, 1996 WL 374188).[8] The ALJ's second point merely states the obvious— the consultative examiner examined Samuel. The fact that Dr. Hawkins observed and examined Samuel on one occasion for 26 minutes does not explain why Dr. Hawkins' opinion was entitled to greater weight than the opinion of Dr. Elias, who also examined Samuel. Third, the ALJ states that Dr. Hawkins' conclusions are "generally supported by the objective findings in the record," but the only objective findings in the record cited by the ALJ as consistent with Dr. Hawkins' conclusions are Dr. Hawkins' own examination findings. (R. 25, 486-87). The ALJ did not discuss or identify any other objective findings in the record which supported Dr. Hawkins' opinion. The consistency of Dr. Hawkins' conclusions with her own findings alone is an

---

[8] SSR 96-2p was rescinded for claims filed on or after March 27, 2017. *See* 2017 WL 3928305 (March 27, 2017). SSR 96-2p is still applicable to Samuel's claim which was filed on December 17, 2013.

insufficient reason to warrant giving her opinion greater weight than the opinion of Samuel's treating orthopedic physician, Dr. Elias.

For these reasons, the Court concludes that the ALJ failed to provide good reasons for why the opinion of Samuel's treating orthopedic specialist was deserving of less weight than the opinion of the examining state agency consultant. On remand, the ALJ may recontact Dr. Elias if the evidence is insufficient to determine whether the claimant is disabled. 20 C.F.R. § 404.1520b(2)(i). The ALJ may seek clarification from Dr. Elias regarding the basis for his 2014 opinion and whether his opinion refers to Samuel's condition before December 31, 2013.

Samuel further argues that the ALJ failed to evaluate the conflicting medical opinions in accordance with the required regulatory factors. In assessing conflicting medical opinion evidence, ALJs must consider several factors, including "the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion." *Campbell*, 627 F.3d at 308; 20 C.F.R. § 404.1527(c)(1)-(6). "[W]e consider all of the [above] factors in deciding the weight we give to any medical opinion." 20 C.F.R. § 404.1527(c). Although "[a]n ALJ may discount a treating physician's medical opinion if it is inconsistent with the opinion of a consulting physician," the relative merits of both must be considered under the required regulatory factors. *Skarbek*, 390 F.3d at 503.

Here, the ALJ failed to weigh Drs. Hawkins' and Elias' opinions under all of the regulatory factors. Other than attempting to address "the consistency and support for the physician's opinion," the ALJ did not mention any of the additional regulatory factors when evaluating either opinion. Specifically, the ALJ did not analyze the nature and extent of the treatment relationship, the frequency of examination, the types of test performed, or whether Drs. Hawkins and Elias had a relevant specialty. Dr. Hawkins is a family physician with no special training or area of expertise. Dr. Elias is an orthopedic surgeon, and he conducted a comprehensive orthopedic evaluation and x-rays of Samuel's spine. "Social Security

regulations specify that particular weight be given to the opinions of specialists related to their areas of expertise." *Israel v. Colvin*, 840 F.3d 432, 438 (7th Cir. 2016); 20 C.F.R. § 404.1527(c)(5). The ALJ instead gave "great weight" to Dr. Hawkins who is not a specialist and who spent only 26 minutes with Samuel before writing her report. Further, the ALJ did not consider the extent to which Dr. Hawkins was familiar with the other information in Samuel's record. As to the opinions of consulting examiners, an ALJ shall consider "the extent to which a medical source is familiar with the other information in [the claimant's] case record … in deciding the weight to give a medical opinion." 20 C.F.R. § 404.1527(c)(6). Dr. Hawkins did not review any of Samuel's prior medical records from Dr. Levinson. Because Dr. Hawkins examined Samuel in April 2014, the later dated treatment notes and opinion of Dr. Elias were also not available for consideration by Dr. Hawkins at the time she examined Samuel. Dr. Elias found significant abnormal findings, including bilateral radiculopathy with herniated discs of L1-L2, L4-L5 and L5-S1, end plate fractures of L3-L4 and T12-L1, and facet arthropathy for all levels. (R. 500). The ALJ did not consider that subsequently obtained medical evidence from Dr. Eilas could cast doubt on Dr. Hawkins' opinion.

Without consideration of the additional regulatory factors, the ALJ's decision to credit the opinion of Dr. Hawkins over that of Dr. Elias is not supported by substantial evidence. *Schreiber v. Colvin*, 519 Fed. Appx. 951, 959 (7th Cir. 2013) (an ALJ's failure to "sufficiently account [ ] for the factors in 20 C.F.R. § 404.1527" prevents the Court from assessing whether the ALJ properly analyzed the treating physician's opinion). On remand, the ALJ should evaluate and weigh each of the medical opinions in light of all of the regulatory factors. *See* SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996) (stating that treating source medical opinions "are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527.").

In weighing the opinion evidence, the ALJ also gave "great weight" to the state agency consultants' opinions that Samuel remains capable of performing medium work. (R. 25). The consultants, Drs. Galle and Kim, did not examine Samuel and are not orthopedic specialists.

According to the ALJ, the consultants are familiar with the "rules and regulations of disability determinations" and their limitation to medium work was consistent with Dr. Hawkins' normal examination findings.  (R. 25, 74, 86).

The ALJ's decision to credit the opinions from the state agency consultants (Drs. Galle and Kim) over Dr. Elias' opinion is not supported by substantial evidence.  First, as explained above, an ALJ cannot reject a treating physician's opinion simply because a non-treating doctor is more familiar with the disability standards.  *Gravina*, 2012 WL 3006470, at *5.  Second, as previously indicated, the ALJ failed to provide goods reasons for giving great weight to Dr. Hawkins' consultative examination findings over those of Dr. Elias.  As a result, Drs. Galle's and Kim's reliance on Dr. Hawkins' findings does not provide substantial evidence to support the ALJ's decision to assign little weight Dr. Elias' assessment.

Further, the ALJ erred in giving great weight to the non-examining state agency consultants' opinions because they were based on an incomplete review of the medical record. *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (criticizing ALJ's reliance on nonexamining consulting physicians' conclusions that were based on an incomplete medical record).  Dr. Galle reviewed only Samuel's treatment records that were available before Dr. Elias submitted his later interpretation of the January 2011 MRI of Samuel's lumbar spine. *Campbell v. Astrue*, 627 F.3d at 309 (reversing and remanding where the state agency consultants did not have the benefit of reviewing mental health treatment records that did not exist at the time).  Dr. Kim appears to only have had access to Dr. Elias' June 13, 2014 opinion and not Dr. Elias' May 15, 2014 interpretation of the 2011 MRI.  (R. 79, 504-09).  Dr. Elias' interpretation of the January 2011 MRI bears on whether Samuel was disabled during the relevant period.  According to Dr. Elias, the January 2011 MRI revealed significant damage to Samuel's lumbar spine which was not included in the MRI report.  This evidence could have affected the consulting physicians' opinions.  Drs. Galle's and Kim's opinions alone cannot support the ALJ's RFC determination because they did not consider this important medical evidence added to the record after they

made their opinions. The ALJ should have acknowledged that that state agency consultants' opinions were not based on a review of a complete case record and that subsequently obtained evidence from Dr. Elias could cast doubt on the state agency consultant's opinions. On remand, if the ALJ has any questions about whether to give controlling weight to Dr. Elias' opinion, she should order an additional consultative examination by an orthopedic specialist or other appropriate health professional who is provided full access to Samuel's prior medical records, including Samuel's January 2011 lumbar spine MRI and Dr. Elias' interpretation of the MRI, and/or she should seek the assistance of a medical expert. *Goins*, 764 F.3d at 680 (holding that MRI was new and potentially decisive medical evidence that should have been submitted to "medical scrutiny.").

**B.    RFC Determination**

Samuel next contends that the ALJ improperly ignored medical evidence favorable to him in making the RFC determination. In particular, Samuel contends that the ALJ failed to discuss why Dr. Elias' abnormal examination findings and his interpretation of Samuel's January 22, 2011 MRI did not result in a more restrictive RFC determination. "Although the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *Bauzo v. Bowen*, 803 F.2d 917, 923 (7th Cir. 1986) (stating "[b]oth the evidence favoring the claimant as well as the evidence favoring the claim's rejection must be examined, since review of substantiality of evidence takes into account whatever in the record fairly detracts from its weight."). An ALJ must consider all relevant medical evidence in assessing a claimant's RFC and "cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).

The ALJ committed reversible error by failing to consider all relevant medical evidence in the record. The ALJ failed to mention the abnormal findings from the examination by Dr. Elias

on May 12, 2014.  For example, the ALJ failed to note Samuel demonstrated slow stance gait, difficulty heel walking and squatting, range of motion limited by approximately 50%, difficulty getting on and off the examination table, positive straight leg raise testing on the left, positive Patrick's and Gaenslen's testing bilaterally, and a failed Milgram's test.  (R. 499).  The ALJ did not mention x-rays showing thoracolumbar curvature with base narrowing and collapse of one vertebra with some changes in the hip area.  *Id.*  The medical record also includes Dr. Elias' interpretation of the January 2011 lumbar spine MRI film showing that Samuel had "very serious damage to the L1-L2 disc with very serious anterior herniation," fracture of the end plates of L1-L2 (mainly L1), T12-L1 damaged with respect to HIZ, large herniated disc at L4-L5, and herniated disc with spondylolysis at L5-S1.  (R. 550).  While the ALJ noted the report of the January 2011 MRI of the lumbar spine, she made no mention of Dr. Elias' different interpretation of the MRI film.  (R. 24, 500).  The MRI report is inconsistent with Dr. Elias' interpretation.  Dr. Elias found that the MRI report "does [Samuel] injustice" by understating the severity of the damage to Samuel's lumbar spine.  (R. 500).  The ALJ inexplicably failed to mention the discrepancy between the MRI report and the MRI film identified by Dr. Elias, let alone how she resolved this evidentiary conflict.  (R. 24, 500).  Dr. Elias' interpretation was significant because the vocational expert testified that Samuel could not perform his past work if he could not perform light work, which Dr. Elias found.  (R. 62).

The Commissioner contends that the ALJ did not err in failing to recognize Dr. Elias' disagreement with an MRI report and failing to obtain a medical expert to interpret the evidence because Dr. Elias does not provide the date of the MRI report he criticized.  (Doc. 16 at 7).  This argument is an impermissible *post hoc* justification which the Commissioner cannot use to defend the ALJ's decision because the ALJ did not rely on this rationale in her opinion.  *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) (stating "[u]nder the Chenery doctrine, the Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace.").  In any case, the January 22, 2011 MRI is the only MRI in the record dated

before Dr. Elias' May 2014 report.  Because there is no other MRI in the record before May 2014, it is reasonable to assume that Dr. Elias reviewed the January 22, 2011 MRI report when completing his report.  However, if the ALJ was presented with insufficient information to determine whether Dr. Elias' report criticized the January 2011 MRI report, the ALJ was required to "try to resolve the … insufficiency by" recontacting Dr. Elias.  20 C.F.R. § 404.1520b(2).  The ALJ's failure to minimally discuss the abnormal findings in Dr. Elias' May 2014 evaluation and his interpretation of the January 2011 MRI of the lumbar spine, which show Samuel's impairments may cause greater functional limitations, leaves the Court unable to conclude that her RFC determination is supported by substantial evidence.  *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (stating that the ALJ's failure to evaluate evidence supporting plaintiff's claim "does not provide much assurance that he adequately considered [plaintiff's] case."); *Zuraswski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001) (holding that an ALJ may not "ignore an entire line of evidence that is contrary to her findings, rather she must articulate at some minimal level her analysis of the evidence to permit an informed review.").  On remand, the ALJ shall fully consider all relevant medical evidence in determining Samuel's RFC, including the abnormal results of Dr. Elias' May 2014 examination as well as Dr. Elias' interpretation of the January 2011 MRI results of Samuel's lumbar spine.

## C.    Remaining Issues

Samuel further argues that the ALJ improperly assessed the credibility of his subjective allegations of pain and relied on faulty vocational expert testimony.  On remand, the ALJ's assessment of Samuel's subjective symptoms and the VE's opinion may be affected by the ALJ's reexamination of the medical opinion evidence and RFC determination.  Because a remand is warranted on the foregoing grounds, the Court need not reach a conclusion on Samuel's other arguments.  Samuel may raise those issues before the ALJ on remand.  20 C.FR. § 404.983 (on remand, "[a]ny issues relating to your claim may be considered by the administrative law judge.").

For consideration on remand, however, the Court notes that the ALJ did not address Samuel's 37-year work history in assessing his credibility. "Although [a]n ALJ is not statutorily required to consider a claimant's work history, [] 'a claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.'" *Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016) (*quoting Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015)). On remand, the ALJ will have an opportunity to address Samuel's lengthy work history in assessing his credibility.

## III. CONCLUSION

For the reasons and to the extent stated above, the ALJ's decision is reversed, and this case is remanded to the Social Security Administration for further proceedings consistent with this Opinion. The Clerk is directed to enter judgment in favor of Plaintiff Charles E. Samuel and against Defendant Commissioner of Social Security.

**E N T E R:**

**Daniel G. Martin**
**United States Magistrate Judge**

**Dated: April 9, 2018**